629 P.2d 1074 (1981)
Ralph GONZALES, Petitioner,
v.
The DISTRICT COURT In and For the COUNTY OF OTERO, State of Colorado, and the Honorable Fred E. Sisk, one of the Judges thereof, Respondents.
No. 80 SA 553.
Supreme Court of Colorado, En Banc.
June 15, 1981.
*1075 Lawrence K. Dean, Philip M. Bienvenu, Colorado Rural Legal Services, Inc., La Junta, for petitioner.
Michael T. Mitchell, Mitchell & Mitchell, P. C., Rocky Ford, for respondents.
DUBOFSKY, Justice.
In this original proceeding under C.A.R. 21, the Petitioner Ralph Gonzales asks us to vacate an order of the Respondent Otero County District Court (Otero District Court) denying his motion to dismiss a citation directing him to appear and show cause why he should not be held in contempt of the Otero District Court for his alleged failure to comply with a Decree of Dissolution (decree) entered by the District Court in and for the City and County of Denver (Denver District Court). We issued a Rule to Show Cause, and because we now conclude that the Otero District Court lacks jurisdiction to enforce the Denver District Court's decree, we make the Rule absolute.
In April, 1974, the Denver District Court entered a decree dissolving the Petitioner's marriage to Shirley J. Gonzales (Ms. Gonzales). The decree granted custody of the couple's minor child to Ms. Gonzales and ordered the Petitioner to make monthly child support payments of $75.00 "until further order of the court."
Both the Petitioner and Ms. Gonzales now reside in Otero County, Colorado. On July 29, 1980, the Otero County Department of Social Services (Department) filed a civil action captioned "Petition for Order Directing Issuance of Contempt Citation" in Otero District Court. The petition alleged that Ms. Gonzales had assigned her child support rights against the Petitioner to the Colorado Department of Social Services and that the Petitioner had failed to make the monthly child support payments ordered by the Denver District Court. The petition was accompanied by a certified copy of the Denver decree.
In accordance with C.R.C.P. 107, the Otero District Court issued an ex parte citation to the Petitioner ordering him to appear and show cause why he should not be held in contempt of the Otero District Court for his failure to make the child support payments decreed by the Denver District Court. The Petitioner moved to dismiss the contempt citation, arguing that the Otero District Court lacked jurisdiction to enforce the decree. The Otero District Court denied the Petitioner's motion and this original proceeding was filed.
It is settled law in Colorado that a court may exercise its power of contempt to enforce orders entered in a dissolution of marriage proceeding. Harvey v. Harvey, 153 Colo. 15, 384 P.2d 265 (1963). See section 14-10-118(2), C.R.S.1973; C.R.C.P. 107. It is equally well-settled that a district court which properly acquires jurisdiction of the parties and subject matter in a dissolution action retains that jurisdiction until all matters arising out of the litigation are resolved. Blank v. District Court, 190 Colo. 114, 543 P.2d 1255 (1976); Brown v. Brown, 183 Colo. 356, 516 P.2d 1129 (1974). Among these matters is the support of the parties' minor children. Sauls v. Sauls, 40 Colo. App. 275, 577 P.2d 771 (1978), cert. den. April 24, 1978. Thus, a district court which has entered a decree of dissolution possesses continuing in personam and subject matter jurisdiction to enforce its child support orders by punishing a non-complying obligor for contempt of court; contempt for failure to comply with the court's orders is not a separate proceeding but a continuance of the dissolution action. Brown v. Brown, 31 Colo.App. 557, 506 P.2d 386 (1973), aff'd in *1076 part, r'vd in part, 183 Colo. 356, 516 P.2d 1129 (1974). See Shapiro v. Shapiro, 60 Misc.2d 622, 303 N.Y.S.2d 565 (1969).
As a general rule, jurisdiction to punish a contempt rests solely in the contemned court; no court can try a contempt against another. 17 Am.Jur.2d, Contempt § 84.[1] As we observed in Shotkin v. Atchison, T. & S. F. R. Co., 124 Colo. 141, 144, 235 P.2d 990, 992 (1951):
"[I]t has uniformly been held that only the court having jurisdiction of the case can hold one or more of the parties in contempt.

* * * * * *
`Each court of the state is an integral part of a single judicial system, and, in theory, and, generally speaking, in practice, no two integral parts of the system will at the same time exercise jurisdiction over the same persons and the same subject matter; ... where the jurisdiction of the one begins, the jurisdiction of the other ends.'"
(Emphasis added.) Accord Ogeltree v. Watson, 223 Ga. 618, 157 S.E.2d 464 (1967); Connell v. Connell, 222 Ga. 765, 152 S.E.2d 567 (1966); Houston v. Hennessy, 534 S.W.2d 52 (Mo.App.1975); Shapiro v. Shapiro, supra.
Here, the Denver District Court, because it possesses continuing jurisdiction to enforce the decree, is "the court having jurisdiction of the case." Shotkin v. Atchison, T. & S. F. R. Co., supra. The Petitioner's failure to pay child support is a contempt against the Denver District Court which it alone may try. The Otero District Court lacks jurisdiction to punish the Petitioner for a contempt committed against another court.
The Otero District Court asserts, however, that it possesses jurisdiction to hold the Petitioner in contempt under either of two exceptions to the principles enunciated above.
First, the Otero District Court argues that it is acting as an "agent" of the Denver District Court for the purpose of enforcing the decree. See 17 Am.Jur.2d, Contempt § 84, supra. However, the Otero District Court does not explain how it acquired this status and we decline to fashion a general rule that each district court in this state is, ipso facto, an agent of the others, authorized to enforce their orders through the exercise of its power of contempt.[2]
Second, the Otero District Court argues that jurisdiction to try the Petitioner's alleged contempt is conferred upon it by section 14-11-101(2), C.R.S.1973 (1980 Supp.). That statute provides:
"The courts of this state in cases of dissolution of marriage, legal separation, or declaration of invalidity of marriage, or for support of minor children or a spouse, or for any combination of the same, where the action originated in this state, have the power to enforce the decrees, judgments, and orders of other states or jurisdictions made pursuant to statutes similar to this statute, or to amend the same, or to enter new orders to the same extent and in the same manner as though such decrees, judgments, and orders were entered in the courts of this state."
(Emphasis added.) The Otero District Court argues that the italicized phrase "other jurisdictions" denotes not only foreign jurisdictions, but other judicial districts within Colorado. We disagree.
Subsection (2) of section 14-11-101 has never before been separately construed by this Court. However, in Glickman v. Mesigh, *1077 Colo., 615 P.2d 23 (1980), a suit seeking modification of an out-of-state divorce decree under section 14-11-101(1) (1980 Supp.),[3] we held that section 14-11-101, in toto:
"reflects a legislative intent to prevent the state of Colorado from becoming a haven for a parent against whom minimal or . . . no support orders have been entered in the jurisdiction of rendition by granting Colorado courts explicit authority to enter appropriate orders in a manner consistent with the full faith and credit clause [U.S.Const. art. IV, sec. 1]."
Colo., 615 P.2d at 26 (emphasis added). See also In re Marriage of Clark, Colo.App., 616 P.2d 1010 (1980). The authority of courts in this state to enter orders enforcing or modifying the decrees of "other jurisdictions" is subordinated to the full faith and credit clause of the United States Constitution only if those jurisdictions lie outside Colorado's territorial boundaries. It therefore makes little sense to construe the phrase "other jurisdictions" in either subsections (1) or (2) of section 14-11-101 to mean, inter alia, other judicial districts within the state of Colorado. "[T]he cardinal purpose, intent or purport of the whole act shall control [;] ... all the parts [shall] be interpreted as subsidiary and harmonious." 2A Sutherland, Statutory Construction § 46.05 at 57 (rev. 3d ed. C. Sands 1973).[4] We therefore hold that the reference to "other jurisdictions" in section 14-11-101(2) denotes only foreign jurisdictions which, although not states, are empowered to enter orders entitled to full faith and credit under U.S.Const. art. IV, sec. 1. Because "other jurisdictions" does not refer to other judicial districts within the state of Colorado, section 14-11-101(2) has no intrastate application and confers no jurisdiction on the Otero District Court to try a contempt committed against the Denver District Court. Compare section 14-5-134, C.R.S.1973; n. 2, supra.
However, for the guidance of the parties and the Otero District Court, we note that the Department may move the Denver District Court under C.R.C.P. 98(f)(2) for a change of venue transferring the Denver District Court's retained jurisdiction over the parties and subject matter of the dissolution action to Otero County. See Bacher v. District Court, 186 Colo. 314, 527 P.2d 56 (1974). Should the motion be granted, the Otero District Court will acquire jurisdiction to hear and decide any matters arising in connection with the decree of dissolution.
Rule made absolute.
NOTES
[1] This exclusive jurisdiction to punish contempt may be abrogated by the legislature. See, e. g., section 14-5-101, et seq., C.R.S.1973 (the Revised Uniform Reciprocal Enforcement of Support Act).
[2] Under the Revised Uniform Reciprocal Enforcement of Support Act, section 14-5-101, et seq., C.R.S.1973 (URESA), duties of support imposed by the orders of one state district court are ordinarily enforceable in the state's other district courts. However, the unequivocal language of section 14-5-134 authorizes the intrastate application of URESA's enforcement provisions only if "both the obligee and the obligor are in this state but in different judicial districts." (Emphasis added.) Here, because both the petitioner and Ms. Gonzales are in Otero County, the Department could not initiate an enforcement action under URESA.
[3] Section 14-11-101(1) reads, in pertinent part:

"Upon the docketing in a court of competent jurisdiction in this state of exemplified copies of all the written pleadings and court orders, judgments and decrees in a case of divorce . . . or for support of minor children . . . entered in any court of competent jurisdiction in any other state or jurisdiction having reciprocal provisions for like enforcement of orders, judgments, or decrees entered in the state of Colorado and upon obtaining jurisdiction by personal service of process ..., said court in this state shall have jurisdiction over the subject matter and of the person in like manner as if the original suit or action had been commenced in this state, and is empowered to amend, modify, set aside, and make new orders as the court may find necessary and proper so as to do justice and equity to all parties to the action according to the public policy of this state...."
[4] It is plain that section 14-11-101(1) does not apply intrastate. See n. 3, supra. The expression "other jurisdictions" appears in both subsections of section 14-11-101. Subsection (2), see p. 1076, supra, plausibly may be interpreted as an express grant of authority to Colorado courts to enforce or modify orders of foreign jurisdictions which amend, modify or set aside a decree originally entered in a Colorado dissolution of marriage action. Subsection (2), in other words, is a corollary of subsection (1); it confirms the power of this state's courts to enforce or modify, in a manner consistent with the full faith and credit clause, those orders of foreign jurisdictions entered in accordance with statutory provisions similar to subsection (1), modifying a decree or order first entered in a dissolution proceeding in this state. Cf. Stevens v. Stevens, Colo.App., 611 P.2d 590 (1980) (decided under U.S.Const. art. IV, sec. 1).