**In re Richard S. LaRUE, Debtor.**

**Lori McCRACKEN, Plaintiff,**

v.

**Richard S. LaRUE, Defendant.**

**Bankruptcy No. 96–30505.
Adv. No. 96–3116.**

United States Bankruptcy Court,
E.D. Tennessee.

Jan. 23, 1997.

S. Randolph Ayres, Athens, TN, for Plaintiff.

Moore, Brooks & Ragle, C. Allen Ragle, Knoxville, TN, for Debtor.

### *MEMORANDUM*

RICHARD S. STAIR, Jr., Chief Judge.

The Plaintiff, Lori McCracken, and the Debtor, Richard S. LaRue, were married on February 14, 1994. They have one daughter, Megan Caroline LaRue, who is two years old. The Plaintiff was granted a divorce from the Debtor, by default, in a January 6, 1996 Final Decree, entered by the Circuit Court for McMinn County, Tennessee. The Circuit Court granted custody of the parties' daughter to the Plaintiff.

As material to this adversary proceeding, the January 6, 1996 Final Decree imposed certain obligations on the Debtor. Specifically, the Final Decree provides for the Debtor to pay child support, attorney's fees and certain of the parties' joint marital obligations as follows:

> It is further ORDERED that child support is set at $70.00 per week, payable through the Clerk's office, plus the 5% collection fee. Defendant [the Debtor] is in addition to immediately obtain and keep current medical insurance upon the minor child of the parties and upon his agreement as announced in open court, shall pay any and all remaining medicals not covered by such effective insurance, including a current doctor bill in the approximate sum of $100.00 owed to Dr. Johnny Carter of Athens, Tennessee, on behalf of the child, Megan. He shall pay the same within 30 days of this judgement order. Defendant is also ordered to pay all attorney's fees of $500.00 and court costs in this case He shall pay the attorney's fees with[in] 90 days of this judgement order.
>
> ... In addition, he shall pay the outstanding balances on the Lowe's charge card, Citibank, in the approximate sum of $5,100.00, and the Tennessee Teacher's Credit Union account, in the approximate sum of $3,200.00.[1]

The Final Decree contains no "hold harmless" language requiring the Debtor to indemnify or reimburse the Plaintiff for any portion of the parties' joint obligations she is required to pay.

On February 13, 1996, the Debtor filed a Chapter 7 petition with this court. The Plaintiff commenced this adversary proceeding on May 20, 1996, with the filing of a Complaint which seeks a determination that the Debtor's obligations arising out of the January 6, 1996 Final Decree are nondischargeable pursuant to 11 U.S.C.A. § 523(a)(5) or (15) (West 1993 & Supp.1996). On November 7, 1996, the court entered a Scheduling Order prepared and submitted by the parties. The Scheduling Order defines the issue to be resolved as follows: "Are the debts and obligations imposed upon the Debtor/Defendant by the parties' Final Decree of Divorce nondischargeable under the provisions of 11 U.S.C. § 523(a)(5), 11 U.S.C. § 523(a)(15)(A), and/or 11 U.S.C. § 523(a)(15)(B)?"

The Debtor, in a January 10, 1997 Brief and at the trial, stipulates that the following child support obligations are nondischargeable under § 523(a)(5): (1) his obligation to pay seventy dollars per week in child support, plus a five percent collection fee; (2) his obligation to obtain and keep current medical

---

1. The Debtor was also required to pay an indebtedness secured by a 1981 Jeep truck. The Plaintiff testified that this obligation was the Debtor's sole responsibility.

insurance for the parties' minor child; and (3) his obligation to pay any and all remaining medicals not covered by such insurance, including the $100.00 doctor bill owed to Dr. Johnny Carter of Athens, Tennessee. Therefore, the issue before the court, restated in terms of the statute involved, is whether the obligation to pay certain of the parties' joint debts imposed upon the Debtor by the January 6, 1996 Final Decree is non-dischargeable pursuant to 11 U.S.C.A. § 523(a)(5) or (15), those joint debts being the outstanding balances owed: (1) on the Lowe's charge card; (2) to Citibank, in the approximate sum of $5,100.00; and (3) to the Tennessee Teacher's Credit Union, in the approximate sum of $3,200.00. An additional issue involves the obligation imposed upon the Debtor to pay attorney's fees and court costs. The trial of this adversary proceeding was held on January 17, 1997.

The Plaintiff bears the burden of proving nondischargeability under § 523(a) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 290–91, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). Moreover, the exceptions to discharge are to be strictly construed against the creditor. *Manufacturer's Hanover Trust Co. v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir.1988). "One exception to this principle of statutory construction is found in section 523(a)(5), in which the term 'support' has been given a broad construction by most courts to promote the Congressional policy that favors enforcement of obligations for spousal and child support." 4 COLLIER ON BANKRUPTCY ¶ 523.05 (15th ed. rev.1996).

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(I) (West 1993).

## I

At the trial, the Plaintiff's proof focused on her alleged inability to pay the disputed debts and her contention that the Debtor has the ability to pay these debts. Conversely, the Debtor's proof focused on his alleged inability to pay the disputed debts and his contention that the Plaintiff can pay the debts.[2] However, a threshold issue the court must deal with as a prerequisite to its consideration of the merits of the parties' respective arguments is whether § 523(a)(5) and (a)(15) have application, as a matter of law, to the obligations imposed upon the Debtor under the January 6, 1996 McMinn County Circuit Court Final Decree. For reasons hereinafter discussed, the court has determined that the Plaintiff has no claim against the Debtor regarding the joint marital debts, attorney's fee and court costs cognizable under either § 523(a)(5) or (a)(15) emanating from the Final Decree.

## II

Section 523(a)(5) provides in material part:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

11 U.S.C.A. § 523(a)(5) (West 1993).

Section 523(a)(15) provides in material part:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

---

**2.** Both Plaintiff and Debtor are employed, but both are also receiving financial assistance from their families. Despite the arguments of each party that the other can and should make certain expense reducing changes, the court is satisfied that both Plaintiff and Debtor are doing the best they can under the circumstances and that neither has the ability to pay the debts that are the focal point of this adversary proceeding.

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

11 U.S.C.A. § 523(a)(15) (West Supp.1996). One court has paraphrased this exception to discharge as follows:

"[T]he section can be read to make property settlements nondischargeable IF a debtor is able to pay those debts or IF a discharge would be too detrimental to the ex-spouse. Congress has decided that if a debtor is able to pay the debt owed to the ex-spouse without harming him or herself more than nonpayment would harm the ex-spouse, the debtor should uphold his or her separation obligation."

*Collins v. Hesson (In re Hesson)*, 190 B.R. 229, 237 (Bankr.D.Md.1995) (quoting *Kessler v. Butler (In re Butler)*, 186 B.R. 371, 373 (Bankr.D.Vt.1995)).

■ Regardless of whether the nondischargeability complaint is raised under § 523(a)(5) or (a)(15), these subsections apply only to obligations owed by the debtor directly to a spouse, former spouse, or child "in connection with" a divorce decree, separation agreement, or related court order. Fundamental to the maintenance of any complaint seeking a determination of the dischargeability of a debt under § 523(a)(5) or (a)(15) is the requirement that the debtor must be obligated to the plaintiff under the terms of the requisite agreement or order. In the present case, the January 6, 1996 Final Decree imposes no obligation payable by the Debtor, directly or indirectly, to the Plaintiff.

### III

The legislative history to § 523(a)(5) notes:

Paragraph (5) excepts from discharge debts to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of, the spouse or child. This language ... will apply to make nondischargeable only alimony, maintenance, or support owed directly to a spouse or dependent. *See Hearings,* pt. 2, at 942.

H.R.Rep. No. 95–595, at 364 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6320; S.Rep. No. 95–989, at 79 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865. Although § 523(a)(5) requires that the debt be owed directly to the former spouse, the legislative history makes clear the congressional intent that § 523(a)(5) was not intended to require direct payment to the former spouse in the case of an agreement to hold a spouse harmless on joint debts.

This provision will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement. *See Hearings,* pt. 3, at 1287–1290.

*Id.*

The Sixth Circuit case of *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir. 1983), best exemplifies an application of § 523(a)(5) in the context of a debtor's obligation to pay debts "in connection with" a property settlement agreement incorporated into a divorce decree. *Calhoun* involved a continuing obligation by the debtor to assume marital debts and hold harmless his former wife. The *Calhoun* obligation was incurred as part of a divorce settlement. As

material to the present adversary proceeding, the Sixth Circuit found that the debtor's obligation to pay joint marital debts and to hold harmless his former wife could constitute nondischargeable support under § 523(a)(5) although payments were to be made to the third party creditors and not directly to the former spouse. In the present case, as previously noted, the January 6, 1996 Final Decree does not contain a "hold harmless" provision. Therefore, the Final Decree establishes no entitlement to indemnification or reimbursement in favor of the Plaintiff if the Debtor fails to make the payments required.

In sum, there is no debt "in connection with" the Final Decree which obligates the Debtor to the Plaintiff. The Debtor's obligation is to pay court costs, attorney's fees and the parties' joint debts: obligations to third party creditors, not his former spouse. If he fails to carry out these obligations, the Plaintiff has no resulting claim against the Debtor for any sum she is required to pay because he is not obligated to indemnify her in the absence of a hold harmless agreement. Because all of the obligations at issue in the present proceeding are obligations owed by the Debtor solely to third party creditors as opposed to his former spouse, § 523(a)(5) is inapplicable to an action to render these debts nondischargeable. *See In re Spencer*, 182 B.R. 263 (Bankr.E.D.Cal.1995) (noting the distinction between obligations owed to a spouse, former spouse, or child, and obligations owed solely to third parties); *7th Probate Court v. Erfourth (In re Erfourth)*, 126 B.R. 736 (Bankr.W.D.Mich.1991) (noting that *Calhoun* renders § 523(a)(5) applicable to debts payable to third parties so long as they are owed to the spouse, former spouse, or child as a result of a hold harmless agreement or other right to indemnification). In reaching this conclusion, this court shares the concerns expressed by Chief Judge David E. Russell in *Spencer:*

> The court recognizes the policy conflict inherent in this rule.... However, this rule is consistent with the "plainly expressed" language of § 523(a)(5) and its legislative history which did not intend to make all support obligations dischargeable. It is not for this court to "legislate" expan-

sions to the nondischargeability provisions of § 523(a). If bankruptcy courts are to except from discharge those debts arising from support of a debtor's [former spouse], rather than merely those debts owed directly to the debtor's [former spouse], then Congress must amend the Bankruptcy Code to expand the language of § 523(a)(5).

*Spencer,* 182 B.R. at 267–68.

## IV

The legislative history to § 523(a)(15) is also instructive as to the application of that subsection:

> The [§ 523(a)(15)] exception applies only to debts incurred in a divorce or separation that are owed to a spouse or former spouse, and can be asserted only by the other party to the divorce or separation. If the debtor agrees to pay marital debts that were owed to third parties, those third parties do not have standing to assert this exception, since the obligations to them were incurred prior to the divorce or separation agreement. It is only the obligation owed to the spouse or former spouse—an obligation to hold the spouse or former spouse harmless—which is within the scope of this section.

H.R.Rep. No. 103–835, at 55 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3364 (footnote omitted).

In the absence of a "hold harmless" provision, a former spouse who is called upon to pay a claim owed to a creditor but included as a debt that the debtor was supposed to pay will find that debt dischargeable. *Belcher v. Owens (In re Owens)*, 191 B.R. 669, 674 (Bankr.E.D.Ky.1996) ("The absence of ... hold harmless language or any other language ... which could be construed to create a new debt from ... [debtor] to ... [plaintiff], leads to the conclusion that this is not a debt 'incurred by the debtor in the course of the ... separation agreement.' ") (quoting *Stegall v. Stegall (In re Stegall)*, 188 B.R. 597, 598 (Bankr.W.D.Mo.1995) (holding that in the absence of a hold harmless agreement, a former spouse has no claim against the debtor to pay a debt listed on the divorce

agreement as "belonging" to the debtor because such a debt is not "incurred" in connection with the divorce, but was incurred in connection with the debtor's and former spouse's original transaction with the creditor)); *see also Reeder v. Zeigler (In re Zeigler),* Ch. 7 Case No. 94–61854, Adv. No. 95–6104, 1995 WL 512197 (Bankr.N.D.Ohio Aug. 9, 1995). In *Zeigler,* the court noted that the debtor's obligation to pay a Discover Card debt was not incurred in connection with the divorce decree; rather, it was incurred by both the plaintiff and debtor during their marriage. The only relevant obligation of the debtor incurred in connection with the divorce decree was that the plaintiff be held harmless for the Discover Card debt. Thus, only the hold harmless obligation was nondischargeable under § 523(a)(15).

In sum, this court holds that, in the absence of a hold harmless agreement, § 523(a)(15) is inapplicable to joint debts that were incurred by the Debtor prior to the divorce proceeding. Moreover, § 523(a)(15) is also inapplicable to debts owing to third parties, despite the fact that they were incurred in the divorce proceeding, since the statute, supported by its legislative history, makes it clear that this exception to dischargeability applies only to debts that are owed to a spouse or former spouse. Because all of the obligations at issue in the present proceeding are obligations owed by the Debtor to third party creditors as opposed to his former spouse, § 523(a)(15) is inapplicable to an action to render these debts nondischargeable.

Therefore, the court finds the following obligations of the Debtor to be dischargeable debts as to the Plaintiff: (1) the joint debts imposed upon the Debtor by the January 6, 1996 Final Decree entered by the Circuit Court for McMinn County, Tennessee, including: (a) the obligation to pay the outstanding balance on a Lowe's charge card; (b) the obligation to pay Citibank in the approximate sum of $5,100.00; and (c) the obligation to pay Tennessee Teacher's Credit Union in the approximate sum of $3,200.00; and (2) the court costs and attorney's fees imposed upon the Debtor by the January 6, 1996 Final Decree entered by the Circuit Court for McMinn County, Tennessee. An appropriate judgment will be entered.

### JUDGMENT

For the reasons set forth in the Memorandum filed this date, it is ORDERED, ADJUDGED and DECREED as follows:

1. As to the Plaintiff, the following obligations imposed upon the Defendant under the terms of the Final Decree entered in the Circuit Court for McMinn County, Tennessee, on January 6, 1996, in Case No. 20,450, are dischargeable debts:

A. The joint marital debts, including: (i) the Defendant's obligation to pay the outstanding balance on a Lowe's charge card; (ii) the Defendant's obligation to pay Citibank in the approximate sum of $5,100.00; and (iii) the Defendant's obligation to pay Tennessee Teacher's Credit Union in the approximate sum of $3,200.00; and

B. The court costs and attorney's fees.

2. As to the Plaintiff, as stipulated by the Defendant, the following obligations imposed upon the Defendant under the terms of the Final Decree entered in the Circuit Court for McMinn County, Tennessee, on January 6, 1996, in Case No. 20,450, are nondischargeable debts pursuant to 11 U.S.C.A. § 523(a)(5) (West 1993):

A. The Defendant's obligation to pay Seventy Dollars per week in child support, plus a five percent collection fee;

B. The Defendant's obligation to obtain and keep current medical insurance for the parties' minor child; and

C. The Defendant's obligation to pay any and all remaining medicals not covered by such insurance, including the $100.00 doctor bill owed to Dr. Johnny Carter of Athens, Tennessee.