**In re Michael A. GIBSON, Debtor.**

**Pattianne GIBSON, Plaintiff–Appellant,**

**v.**

**Michael A. GIBSON, Defendant-Appellee.**

**BAP No. 97–8075.**

United States Bankruptcy Appellate Panel of the Sixth Circuit.

Argued Dec. 3, 1997.

Decided April 3, 1998.

Scott H. Scharf, argued, Rubenstein, Novak, Einbund, Pavlik & Celebrezze, Cleveland, OH, for Appellant.

Sheldon Stein, argued and on brief, Cleveland, OH, for Appellee.

Thomas C. Pavlik, on brief, Rubenstein, Novak, Einbund, Pavlik & Celebrezze, Cleveland, OH, for Appellee.

Before LUNDIN, STOSBERG, and WALDRON, Bankruptcy Appellate Panel Judges.

## OPINION

During their marriage, Michael A. Gibson, the Debtor, and his former spouse, Pattianne Gibson, borrowed money (the "Note") from Robert Perdue, the Debtor's stepfather. When the parties ended their marriage, the Ohio domestic relations court's final Dissolution Decree incorporated their Separation Agreement, which provided the Debtor "shall pay" the Note. The Debtor filed bankruptcy and included Ms. Gibson and his stepfather as creditors. Ms. Gibson, who had been sued by the stepfather for her failure to pay the Note, filed an adversary proceeding to determine the Debtor's obligation on the Note to be nondischargeable pursuant to 11 U.S.C. § 523(a)(5) and § 523(a)(15). The bankruptcy court granted the Debtor's motion for summary judgment and determined the Note to be dischargeable pursuant to both § 523(a)(5) and § 523(a)(15). Ms. Gibson appealed both determinations of the bankruptcy court. The Panel affirms the bankruptcy court's determination that the Note is dischargeable pursuant to § 523(a)(5), although for different reasons than those relied upon by the bankruptcy court. The Panel reverses the bankruptcy court's determination that the Note is dischargeable pursuant to § 523(a)(15) and remands the case for further proceedings.

## I. ISSUES ON APPEAL

1. Whether, within the meaning § 523(a)(5), the bankruptcy court's decision granting summary judgment in favor of the Debtor was correct and, if not, whether the Panel may affirm the decision on a different basis.

2. Whether, within the meaning of the qualifying language of § 523(a)(15), a debt was incurred by the Debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record.

## II. JURISDICTION AND STANDARD OF REVIEW

The Panel has jurisdiction over final orders of the bankruptcy court pursuant to 28 U.S.C. § 158(c)(1). The bankruptcy court's order granting summary judgment to the Debtor is a final appealable order reviewed de novo. *Myers v. IRS (In re Myers )*, 216 B.R. 402, 403 (6th Cir. BAP 1998). Under the de novo standard, the Panel will resolve issues of law independently of the bankruptcy court's determinations. *Id.*

## III. FACTS

Michael A. Gibson ("the Debtor") and Pattianne Gibson ("Ms.Gibson") were married on June 8, 1985. During their marriage, the Debtor and Ms. Gibson incurred a debt to the Debtor's stepfather of $35,000.00, evidenced by a joint promissory Note executed by the parties on May 17, 1992.

The parties' marriage was terminated by a judgment entry (the "Dissolution Decree") of the Domestic Relations Division of the Cuyahoga County Court of Common Pleas on May 9, 1996. The parties also entered into a Separation Agreement, which the domestic relations court fully incorporated into the Dissolution Decree after finding the agreement to be fair, just, and reasonable.

The Debtor filed a Chapter 7 case on October 9, 1996. The Debtor scheduled the joint Note to the Debtor's stepfather in the amount of $26,500.00. On December 9, 1996,

the Debtor's stepfather brought a complaint against Ms. Gibson in the Cuyahoga County Court of Common Pleas seeking $26,500.00 for nonpayment of the Note.

On January 14, 1997, Ms. Gibson brought an adversary proceeding in the Debtor's Chapter 7 case, claiming the Debtor is solely responsible for payment of the Note to his stepfather and, under the terms of the Separation Agreement, the Note is nondischargeable pursuant to 11 U.S.C. § 523(a)(5) and § 523(a)(15). The specific provision of the Separation Agreement which is the focus of the parties' arguments provides:

8. Debts:

The Wife shall pay the following debts and hold the Husband harmless thereon: Home Federal MasterCard, Huntington Visa, 1994 Federal Income Tax debt, and obligations to certified public accountant incurred prior to the parties' separation.

Husband shall pay any and all debts to his parents, if any.

The bankruptcy court granted the Debtor's motion for summary judgment and dismissed Ms. Gibson's complaint. The court concluded that the Separation Agreement did not create any obligation in favor of Ms. Gibson which could be found nondischargeable under § 523(a)(5) or § 523(a)(15). *Gibson v. Gibson (In re Gibson )*, 210 B.R. 113, 115 (Bankr.N.D.Ohio 1997). The bankruptcy court held that, although the Separation Agreement required the Debtor to pay any and all existing debts to his stepfather,[1] a third party creditor, it did not require the Debtor to make any such payments directly to his former spouse. *Id.* In connection with Ms. Gibson's claim under § 523(a)(5), the bankruptcy court further based its determination on the failure to list the Note "as a support obligation" in either the Dissolution Decree or the Separation Agreement. *Id.* In connection with Ms. Gibson's claim under § 523(a)(15), the bankruptcy court further based its determination on the failure to include "hold harmless" language as part of

the Note in either the Dissolution Decree or the Separation Agreement. *Id.*

## IV.  DISCUSSION

### A.  Summary Judgment.

Summary judgment in adversary proceedings is governed by Bankruptcy Rule 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure. FED.R.BANKR.P. 7056. The Sixth Circuit has succinctly described the proceedings on a motion for summary judgment as follows:

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under this test, the moving part may discharge its burden by "pointing out to the [bankruptcy] court ... that there is an absence of evidence to support the nonmoving party's case." The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

*Hall v. Tollett,* 128 F.3d 418, 421–422 (6th Cir.1997) (internal citations omitted).

A material fact is one whose resolution will affect the determination of the underlying action. *Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.,* 88 F.3d 1466, 1472 (6th Cir.1996) (citation omitted). An issue is genuine if a rational trier of fact could find in favor of either party on the issue. *Schaffer v. A.O. Smith Harvestore*

---

1. At oral argument, counsel for both parties agreed that the designation "parents" in the parties' Separation Agreement was intended by the parties to include the Debtor's stepfather Robert Perduc.

*Prods., Inc.*, 74 F.3d 722, 727 (6th Cir.1996) (citation omitted). "The substantive law determines which facts are 'material' for summary judgment purposes." *Hanover Ins. Co. v. American Eng'g Co.*, 33 F.3d 727, 730 (6th Cir.1994) (citations omitted).

## B. Ms. Gibson's Claim under § 523(a)(5).

In pertinent part, § 523(a)(5) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record ..., but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

11 U.S.C. § 523(a)(5).

■ In applying § 523(a)(5) in the Sixth Circuit, "the initial inquiry must be to ascertain whether the state court or the parties to the divorce intended to create an obligation to provide support through the assumption of the joint debts. If they did not, the inquiry ends there." *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1109 (6th Cir.1983). *See also McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192, 195 (6th Cir.1996). "The burden of demonstrating that an obligation is in the nature of support is on the [former spouse]." *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 520 (6th Cir. 1993) (citing *Calhoun*, 715 F.2d at 1111).

### 1. The Bankruptcy Court's Holding under § 523(a)(5).

Although the parties filed memoranda in support of their positions in connection with the Debtor's motion for summary judgment, the Separation Agreement was the only evidence relied upon by either party. After examining Paragraph 8 of the Separation Agreement, the bankruptcy court stated that the only language imposing an obligation on the Debtor was the sentence providing "Husband shall pay any and all debts to his parents, if any." *Gibson*, 210 B.R. at 114. The court next observed "it is clear that the obligees on such debt are the Debtor's parents and not the former spouse." *Id.* The bankruptcy court concluded that § 523(a)(5) does not preclude discharge of the debt because "the subject obligation is not owed to the Plaintiff former spouse, and neither the Decree nor Agreement lists this particular debt as a support obligation." *Id.* at 115.

■ The issue of whether a former spouse's assumption of a joint marital debt can be a nondischargeable support obligation under § 523(a)(5), notwithstanding that the former spouse's payments are owed to a third-party creditor, has been determined by the Sixth Circuit's decision in *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983). The *Calhoun* court specifically held that under § 523(a)(5) "payments in the nature of support need not be made directly to the spouse or dependent to be nondischargeable." *Calhoun*, 715 F.2d at 1107. The issue under § 523(a)(5) is whether "an assumption of joint debts is 'in the nature of alimony, maintenance, or support[.]'" *Id.* This determination is to be made in accordance with federal bankruptcy law, and neither state law, nor the focused or unfocused label affixed to the obligation by the parties, resolves the question of whether a debt is a nondischargeable support obligation under § 532(a)(5). *Id.; accord Fitzgerald*, 9 F.3d 517.

■ Under *Calhoun* and its progeny, an obligation of the Debtor arising under the Separation Agreement need not be payable directly to Ms. Gibson in order to be found nondischargeable under § 523(a)(5). The Separation Agreement's failure to characterize the Note as a support obligation, although arguably evidence of the parties' intent, is not determinative of whether the Note is nondischargeable alimony, maintenance, or support within the meaning of § 523(a)(5). Accordingly, the bankruptcy court's basis for granting summary judgment to the Debtor was erroneous.

### 2. Resolution of the § 523(a)(5) Issue.

■ The Panel "will affirm the decision of the [bankruptcy] court if it is correct for any reason, including a reason not considered by that court." *McDowell v. Krawchison*, 125 F.3d 954, 957 (6th Cir.1997). *See also Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir.1998) (affirming a grant of summary judgment "for reasons ... that differ from those used by the district court"). As determined by substantive law, a material fact in Ms. Gibson's case under § 523(a)(5) is whether the parties intended to create a support obligation by having the Debtor "pay any and all debts to his parents, if any." As the movant, the Debtor can meet his initial summary judgment burden by demonstrating an absence of evidence to support Ms. Gibson's position. *Hall*, 128 F.3d at 422. If the Debtor succeeds, then the nonmoving party, Ms. Gibson, cannot rest on her pleadings, but must counter the Debtor's motion with significant and probative evidence upon which the court could reasonably find in her favor. *Id.*

■ The only evidence submitted to the bankruptcy court by either party was the Separation Agreement itself. While the Separation Agreement's characterization of the Note is not dispositive, the language used in the Separation Agreement is evidence of the parties' intent concerning the Note. The Separation Agreement's language in connection with the Note does not contain any use of the terms "alimony," "maintenance," or "support." Further, there are no factual recitations of the parties' circumstances in the Separation Agreement from which the bankruptcy court could conclude that the parties intended the Debtor's payment of the Note to have the effect of providing Ms. Gibson with alimony, maintenance, or support. *See Singer v. Singer (In re Singer)*, 787 F.2d 1033 (6th Cir.1986). Because Ms. Gibson's claim under § 523(a)(5) is premised upon the Separation Agreement, the Debtor met his initial summary judgment burden of demonstrating the absence of evidence to support her claim.

Confronted with this significant procedural circumstance, Ms. Gibson failed to counter the Debtor's motion with any evidence which could support a judgment in her favor. Ms. Gibson filed no affidavit, nor any other evidence permitted by Rule 56. Her brief response to the Debtor's motion for summary judgment addressed only the Separation Agreement's lack of a "hold harmless" provision in connection with the debt at issue and did not present any evidence upon which the bankruptcy court could reasonably find that the parties intended to provide Ms. Gibson with support through the Debtor's assumption and payment of the Note. Additionally, Ms. Gibson did not request the bankruptcy court to allow her additional time to conduct discovery, nor did she certify in an affidavit pursuant to Rule 56(f) that she was unable to submit facts essential to justify her opposition to the motion for summary judgment.

Summary judgment against Ms. Gibson on her claim under § 523(a)(5) was proper, not because the Note was payable to a party other than the former spouse, and not because of a failure to characterize the Note as a support obligation in the Separation Agreement, but because, after the Debtor's motion for summary judgment demonstrated an absence of evidence to support a § 523(a)(5) determination in Ms. Gibson's favor, there was a failure to take any action which would have prevented the entry of summary judgment.

### C. Ms. Gibson's Claim under § 523(a)(15).

In pertinent part, § 523(a)(15) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the

maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor [.]

11 U.S.C. § 523(a)(15).

■■ "Congress amended the Bankruptcy Code in 1994 to add a new section, 11 U.S.C. § 523(a)(15), that provides that debts incurred in a divorce proceeding are now generally nondischargeable in bankruptcy." *Patterson v. Patterson (In re Patterson)*, No. 96–6374, 1997 WL 745501, at *1 (6th Cir. Nov. 24, 1997)[2] (*see Patterson v. Patterson (In re Patterson)*, 199 B.R. 22 (Bankr. W.D.Ky.1996)). Section 523(a)(15) "exempts from discharge, subject to certain exceptions, *all debts* 'incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record....'" *McCafferty*, 96 F.3d at 195 n. 1 (emphasis ours). "Under [§ 523(a)(15)], a debtor is not discharged from *any* marital debt that is not in the nature of alimony, maintenance or support unless (1) the debtor is unable to pay the debt, or (2) the benefit to the debtor of discharging the debt would outweigh the detriment to the debtor's former spouse." *Patterson*, 1997 WL 745501 at *2 (emphasis ours).

**1. The Bankruptcy Court's Holding Under § 523(a)(15).**

The bankruptcy court examined the provision "Husband shall pay any and all debts to his parents, if any[,]" and found the Note did not satisfy the qualifying language of § 523(a)(15), which requires the debt to be "*incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or*

*other order of a court of record, a determination made in accordance with State or territorial law by a government unit.*" 11 U.S.C. § 523(a)(15) (emphasis ours). The court noted the debt was payable to "someone other than the Debtor's former spouse, with no 'hold harmless' provision applicable thereto[.]" *Gibson*, 210 B.R. at 115. The bankruptcy court held as a matter of law that "in the absence of a 'hold harmless' provision in a divorce decree or separation agreement, a joint debt owed to a third party is a dischargeable debt under § 523(a)(15)." *Id.*

**2. Resolution of the § 523(a)(15) Issue.**

■ A determination of the meaning of the qualifying language of § 523(a)(15), which addresses a debt "*incurred by the debtor in the course of a divorce or separation or in connection with separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a government unit,*" begins with an examination of the language of the statute.

As the United States Supreme Court has instructed courts in examining the provisions of the Bankruptcy Code, "[w]e have stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (citation omitted). That statement is consistent with the United States Supreme Court's principles that statutory interpretation is a holistic endeavor which must begin with the language of the statute itself. Resort to an examination of legislative history is appropriate only to resolve statutory ambiguity, and in the final analysis, such examination must not produce a result demonstratively at odds with the purpose of the legislation. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126,

---

**2.** Although not binding, unpublished decisions of the Sixth Circuit may be cited if persuasive and no published decisions will serve as well. *See*

*Belfance v. Black River Petroleum (In re Hess)*, 209 B.R. 79, 82 n. 3 (6th Cir. BAP 1997).

109 L.Ed.2d 588 (1990); *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). The Sixth Circuit has likewise noted that statutes "must be read in a 'straightforward' and 'commonsense' manner," and that "[w]hen we can discern an unambiguous and plain meaning from the language of a [statute], our task is at an end." *Rogers v. Laurain* (*In re Laurain* ), 113 F.3d 595 (6th Cir.1997) (citations omitted); *see also Bartlik v. United States Dep't of Labor,* 62 F.3d 163 (6th Cir.1995). *Andersson v. Security Fed. Savs. & Loan* (*In re Andersson* ), 209 B.R. 76, 78 (6th Cir. BAP 1997) (alterations in original).

Section 523(a) governs the dischargeability of "any debt" that satisfies the provisions of one of its subsections, including subsection (a)(15). Under the Bankruptcy Code, a "debt" is "liability on a claim." 11 U.S.C. § 101(12). A "claim" is a

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

11 U.S.C. § 101(5). As the Supreme Court recently explained:

A "debt" is defined in the Code as "liability on a claim," § 101(12), a "claim" is defined in turn as a "right to payment," § 101(5)(A), and a "right to payment," we have said, "is nothing more nor less than an enforceable obligation." Those definitions "reflec[t] Congress' broad ... view of the class of obligations that qualify as a 'claim' giving rise to a 'debt....' "

*Cohen v. de la Cruz,* —— U.S. ——, ——, 118 S.Ct. 1212, ——, 140 L.Ed.2d 341 (1998) (internal citations omitted); *see also Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) ("We have previously explained that Congress intended by this language to adopt the broadest available definition of 'claim.' ").

The issue concerning the qualifying language in § 523(a)(15) can be more narrowly focused in the present case as whether, in connection with the Ohio Dissolution Decree and Separation Agreement, the Debtor incurred any enforceable obligation to Ms. Gibson which is not for alimony, maintenance, or support.

Notably absent from the qualifying language of § 523(a)(15) are the phrases "hold harmless" and "payable to a third party." Notably present in the qualifying language of § 523(a)(15) is the term "incurred." The term "incurred" is not defined in the Bankruptcy Code. When faced with statutory language where the words are not defined in the Bankruptcy Code, the Supreme Court has in numerous bankruptcy decisions relied on Black's Law Dictionary. *See, e.g., BFP v. Resolution Trust Corp.,* 511 U.S. 531, 538, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994); *Holywell Corp. v. Smith,* 503 U.S. 47, 53, 112 S.Ct. 1021, 1025, 117 L.Ed.2d 196 (1992); *Dewsnup v. Timm,* 502 U.S. 410, 428, 112 S.Ct. 773, 784, 116 L.Ed.2d 903 (1992); *Farrey v. Sanderfoot,* 500 U.S. 291, 296, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991). The term "incur" is defined as:

To have liabilities cast upon one by act or operation of law, as distinguished from contract, where the party acts affirmatively. To become liable or subject to, to bring down upon oneself, as to incur debt, danger, displeasure and penalty, and to become through one's own action liable or subject to.

BLACK'S LAW DICTIONARY 768 (6th ed.1990).

The most common debts "incurred" in connection with a decree or separation agreement—alimony, maintenance, and support—are excluded from the ambit of § 523(a)(15) and, as in this case, most of the parties' other debts are initially "incurred" prior to the decree or separation agreement. Under what circumstances, then, is it appropriate to determine a debt is "incurred" within the meaning of the qualifying language of § 523(a)(15)? A debtor's obligation as part of a decree or separation agreement to pay a third-party obligation directly to a spouse or to hold a spouse "harmless" on a third-party

obligation are frequent examples of incurring a debt which satisfies the qualifying language of § 523(a)(15); however, the determination of whether a debtor incurs a debt in connection with a Separation Agreement or Dissolution Decree is not limited to the use of hold harmless or other specific indemnification language. A debtor may, and frequently does, incur such an obligation in accordance with applicable nonbankruptcy law. Although it is clear from the jurisdiction granted exclusively to the bankruptcy court to determine § 523(a)(15) issues (11 U.S.C. § 523(c)(1)) that federal law governs the ultimate determination of the issues raised by this Code provision, an analysis of applicable nonbankruptcy law is a required component of the initial determination of whether a debt has been incurred which satisfies the qualifying language of § 523(a)(15). As the Supreme Court stated in *Grogan v. Garner*, 498 U.S. 279, 283–284, 111 S.Ct. 654, 657, 112 L.Ed.2d 755 (1991), "[t]he validity of a creditor's claim is determined by rules of state law[,]" and "[w]e use the term 'state law' expansively herein to refer to all nonbankruptcy law that creates substantive claims." (citation omitted). *See also National City Bank v. Plechaty (In re Plechaty)*, 213 B.R. 119, 128–129 (6th Cir. BAP 1997) (discussing Sixth Circuit precedent holding 28 U.S.C. § 1738 requires federal courts to give full faith and credit to state court judgments which would have preclusive effect on courts within the state).

■ This required analysis of applicable nonbankruptcy law has been recognized by some, but not all, bankruptcy courts. "Further, the creation and enforceability of obligations in a divorce settlement are governed by state law." *Carlisle v. Carlisle (In re Carlisle)*, 205 B.R. 812, 816 (Bankr.W.D.La. 1997). As another bankruptcy court noted:

> [T]he first issue for the Court is whether there is a debt owed within the meaning of this statute *i.e.,* whether the debt was incurred in the course of a divorce or other order of a court of record. The debtor argues that since there is no absolute direction to pay money directly to [his former spouse], there is no debt to [the former spouse]. This is a misreading of the

language of the statute and its intent. Section 523(a)(15) does not require that a court order the debt be paid directly to the spouse. The statute provides that a debtor is not discharged from *any* debt incurred by the debtor in the course of a divorce or in connection with a divorce decree. The statute does not impose a "direct pay" requirement.

Second, although there is no "hold harmless" language in the decree or complaint, under Arkansas law, the debtor incurred a debt to [his former spouse] in connection with the divorce proceeding. [Discussion of Arkansas law omitted.] Based upon that order, the debtor incurred a debt in connection with the divorce within the meaning of section 523(a)(15).

*Johnston v. Henson (In re Henson)*, 197 B.R. 299, 302–303 (Bankr.E.D.Ark.1996). *Accord Schmitt v. Eubanks (In re Schmitt)*, 197 B.R. 312 (Bankr.W.D.Ark.1996).

Other bankruptcy court decisions, which do not contain an analysis of applicable nonbankruptcy law, have concluded that debts owing to third parties and debts not subject to indemnification or hold harmless language do not satisfy the qualifying language of § 523(a)(15). *LaRue v. McCracken (In re LaRue)*, 204 B.R. 531, 535–536 (Bankr. E.D.Tenn.1997); *Belcher v. Owens (In re Owens)*, 191 B.R. 669, 674 (Bankr.E.D.Ky. 1996); *Stegall v. Stegall (In re Stegall)*, 188 B.R. 597, 598 (Bankr.W.D.Mo.1995).

The Panel holds that an analysis which determines the effect of applicable nonbankruptcy law is required in determining whether a debt has been incurred which satisfies the qualifying language of § 523(a)(15) (*see Carlisle, Henson,* and *Schmitt*) and declines to adopt an analysis that fails to determine the effect of applicable nonbankruptcy law (*see LaRue, Owens,* and *Stegall*).

■ In the present case, an analysis of Ohio law is required to determine whether the Debtor incurred a debt which satisfies the qualifying language of § 523(a)(15). In the Dissolution Decree, the domestic relations court found "that the parties have ... entered into a Separation Agreement which is fair, just and equitable, and order[ed] said

agreement ... included herein as if fully rewritten and its terms ordered into execution." Under Ohio law, where a judgment entry incorporates a separation agreement, the separation agreement merges into, and is superseded by, the domestic relations court's order:

A decree which incorporates an agreement is a decree of court nevertheless, and as soon as incorporated into the decree the separation agreement is superseded by the decree, and the obligations imposed are not those imposed by contract, but are those imposed by decree, and enforceable as such. Once the contract is merged into the decree, the value attaching to the separation agreement is only historical.

*Holloway v. Holloway*, 130 Ohio St. 214, 215–17, 198 N.E. 579, 580 (1935). *See also Harris v. Harris*, 58 Ohio St.2d 303, 390 N.E.2d 789 (1979); *Wolfe v. Wolfe*, 46 Ohio St.2d 399, 417–19, 350 N.E.2d 413, 425 (1976); *Greiner v. Greiner*, 61 Ohio App.2d 88, 95–96, 399 N.E.2d 571, 576 (1979).

▋ Upon the merger of a separation agreement into a domestic relations court's final decree, all causes of action under the separation agreement are extinguished and replaced by postjudgment remedies to enforce the decree:

The prevailing rule is that where the underlying obligation is a promise to pay money, a judgment or decree for the payment of money merges the obligation in the judgment or decree and an independent action cannot later be brought on the obligation; but where the obligation and decree require something other than the payment of money, the obligation is not merged in the decree. This rule applies in divorce cases * * *.

*Klassen v. Newell*, 106 Ohio App. 186, 187–89, 153 N.E.2d 704, 705–706 (1957) (citations omitted); *see also Public Fin. Corp. v. Tate*, 197 N.E.2d 825, 827 (Ohio Ct.App.1963) (discussing the merger of underlying causes of action into the judgment disposing of the claim).

Thus, unless the parties have specifically provided that a particular debt is not affected in any manner by their separation agreement, the resulting judgment of an Ohio domestic relations court becomes the sole source of the parties' postdissolution rights and responsibilities with respect to their debts. In this case, as a result of the Separation Agreement incorporated into the Dissolution Decree, the Debtor incurred an obligation to "pay any and all debts to his parents, if any[,]" and Ms. Gibson acquired the right to enforce such total payment of the Note by postdissolution remedies:

While a trial court does not have the power to modify the terms of a separation agreement entered into between the parties, R.C. 3105.65(B) provides that it does have full power to enforce the provisions of such an agreement which has been incorporated into a decree of dissolution of marriage.

*In re Dissolution of Marriage of Seders*, 42 Ohio App.3d 155, 155–57, 536 N.E.2d 1190, 1192 (1987); *see also Cherry v. Figart*, 86 Ohio App.3d 123, 125–27, 620 N.E.2d 174, 176 (1993) ("[A] trial court has 'full power' to enforce the provisions of a separation agreement which has been incorporated into a decree of dissolution."). Such decrees are ordinarily enforced by a court's inherent and statutory power to hold a noncomplying obligor in contempt of court. *Dozer v. Dozer*, 88 Ohio App.3d 296, 301–03, 623 N.E.2d 1272, 1276 (1993); *see also Pugh v. Pugh*, 15 Ohio St.3d 136, 139–40, 472 N.E.2d 1085, 1088 (1984) ("If the dictates of the judicial decree are not followed, a contempt citation will result."); *Tapp v. Tapp*, 105 Ohio App.3d 159, 663 N.E.2d 944 (1995); *Woloch v. Foster*, 98 Ohio App.3d 806, 649 N.E.2d 918 (1994).

It might be noted that the liability of each party to Mr. Perdue under the original Note was unaffected by the Dissolution Decree. Ms. Gibson and the Debtor remained jointly liable on the Note to Mr. Perdue exactly as they had been prior to the dissolution. *As between the Debtor and Ms. Gibson, however, the domestic relations court's entry of the Dissolution Decree had significant new legal consequences.* The entry of the Dissolution Decree extinguished all pre-existing obligations of the parties to each other, whether those obligations existed under the Separation Agreement or otherwise. The Separa-

tion Agreement incorporated into the Dissolution Decree replaced those obligations with new ones fully enforceable as a judgment of the domestic relations court. Further, in the Dissolution Decree, the Debtor incurred an additional obligation in favor of Ms. Gibson to pay any and all debts to his parents, including the Note to Mr. Perdue. This obligation is fully enforceable by Ms. Gibson against the Debtor. Finally, and most significantly, Ms. Gibson obtained, as a result of applicable Ohio law, a new right to payment and related enforcement rights, all of which were incurred by the Debtor in connection with the parties' Separation Agreement as incorporated into the domestic relations court's Dissolution Decree.

■ As a result of the broad definition of claim enacted by Congress (§ 101(5)) and reenforced by the Supreme Court in *Cohen*, — U.S. ——, 118 S.Ct. 1212, the repeated, binding directives to construe statutes according to their plain meaning (*Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)) and in a "straightforward" and "commonsense" manner (*Rogers v. Laurain (In re Laurain )*, 113 F.3d 595 (6th Cir.1997)), and the required analysis of the effect of applicable nonbankruptcy law in determining whether the Debtor incurred a debt which satisfies the qualifying language of § 523(a)(15), the Panel holds that the Debtor's obligation to pay the Note, an obligation which is not of the kind described in § 523(a)(5), was incurred by the Debtor in connection with the Separation Agreement incorporated into the Dissolution Decree and therefore satisfies the qualifying language of § 523(a)(15), notwithstanding that the debt is payable to a third party and the Separation Agreement lacks hold harmless or other indemnification language. As a result, the bankruptcy court's decision concerning the § 523(a)(15) issue is reversed and the case is remanded to the bankruptcy court for further proceedings.

## V. CONCLUSION

The bankruptcy court's order granting summary judgment under § 523(a)(5) is **AFFIRMED**. The court's order granting summary judgment under § 523(a)(15) is **RE**VERSED and the case **REMANDED** for further proceedings consistent with this opinion.